IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MARY L. METZLER, | ) |
| Plaintiff, | ) Case No. 1:03-CV-2625-BBM |
| v. | ) |
| GENERAL MOTORS CORPORATION, et al., | ) |
| Defendants. | ) |

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Plaintiff Mary L. Metzler has responded to the motion for summary judgment filed by defendants General Motors Corporation, Jerome Hunter, Barry Woods and Gordon Zimmer (hereinafter sometimes collectively referred to in the singular as "GM") by admitting virtually all of the facts on which it is based, yet still contending that she is somehow entitled to a jury trial. A cursory examination of plaintiff's briefing reveals that she has abandoned some of her claims, and also has implicitly acknowledged that at least two of the three individual defendants should be dismissed. As for the remaining claims and defendants, plaintiff has offered a series of conclusory allegations unsupported by the record or the

CC 1398668v1

applicable legal standards, and it is apparent that all of her claims are subject to summary judgment.

### I. Plaintiff has abandoned her claims of intentional infliction of emotional distress and sexual harassment, and any claims against defendants Jerome Hunter and Barry Woods.

As an initial matter, defendants explained in their opening brief that plaintiff's claims of intentional infliction of emotional distress and sexual harassment, as well as her allegations against two of the individual defendants, Jerome Hunter and Barry Woods, were time barred or otherwise subject to summary judgment. Defendants' Memorandum at 3-7, 11-13, 19-22. Plaintiff's opposition brief does not address the arguments as to either of these two contentions or defendants. Accordingly, these claims should be deemed abandoned, and summary judgment should be entered in defendants' favor on them.[1] *See Wu v. Southeast-Atlantic Beverage Corp.*, 321 F. Supp. 2d 1317, 1333 (N.D. Ga. 2003) (deeming claims abandoned when not addressed in plaintiff's brief responding to summary judgment motion); *In re Infocure Securities Litigation*, 210 F. Supp. 2d 1331, 1354 (N.D. Ga. 2002) (failure to address argument "indicates . . . abandonment of . . . claim").

---

[1] Plaintiff does make reference at one point to "Defendant Charles Walls." Plaintiff's Response Memorandum at 4. Mr. Walls has never been named as an individual defendant in this action and any references to him in this capacity should be disregarded.

-2-

## II. Plaintiff has failed to create a genuine issue as to whether any defendant wrongfully terminated or breached a contract with her.

Plaintiff contends that she may pursue her claims of breach of contract and wrongful termination, but in doing so misconstrues not only her role as an at-will employee, but the specific representations made to her in connection with her decision to take a special leave of absence from GM, which included a statement that she was not entitled to reemployment at the conclusion of her leave. Consequently, these claims remain subject to summary judgment.

### A. Plaintiff, a GM salaried employee, cannot set forth a claim of wrongful termination under Michigan law.

In a one-paragraph argument at the end of her brief, plaintiff makes the conclusory assertion that her wrongful termination claim is cognizable under Michigan law. Plaintiff's Memorandum at 24-25. Plaintiff cites no authority in support of this proposition, which runs afoul of numerous decisions applying Michigan law and recognizing that GM salaried personnel such as plaintiff who have signed GM's standard employment agreement are at-will employees, and cannot set forth a cause of action for wrongful termination. *See, e.g., Taylor v. General Motors Corp.*, 826 F.2d 452, 457 (6th Cir. 1987) (plaintiff's employment was terminable at will under employment agreement, which was not subject to oral modification); *Richards v. General Motors Corp.*, 991 F.2d 1227, 1234-35 (6th Cir. 1993).

In *Richards*, the Sixth Circuit looked to the employment agreement and its statements that the employee was retained on a month-to-month basis and that any modification of the agreement needed to be in writing, holding that this language precluded the plaintiff from arguing that GM was obligated to terminate him only for cause. *Id.* In support of this conclusion, the court noted that the Michigan Court of Appeals, "[i]nterpreting the same (or very similar) GM form contracts . . . [had] dismissed the claims of similarly situated plaintiffs." *Id.* at 1234 (citing *Parkinson v. General Motors Corp.*, No. 125956 (Mich. Ct. App., Aug. 9, 1991) and *Freer v. General Motors Corp.*, No. 126599 (Mich. Ct. App., Apr. 23, 1992)). *See also Smith v. General Motors Corp.*, 1990 U.S. App. LEXIS 11776 at *7 (6th Cir. 1990) ("[s]everal cases from this jurisdiction have held that, as a matter of law, the relationship between GM and its employees is terminable at-will") (citations omitted).

Plaintiff apparently would like to litigate the interpretation and impact of her GM employment agreement, which undisputedly states that she is an at-will employee and that oral collateral agreements to the contrary are without import. The meaning and impact of these provisions have been litigated repeatedly, and courts have without exception found that GM salaried employees cannot enforce an alleged oral understanding that would conflict with the written terms of this

document. Accordingly, plaintiff's claims of wrongful termination are subject to dismissal.

### B. Plaintiff's breach of contract claim is also barred by her written employment agreement with GM.

Plaintiff devotes the bulk of her response brief to her contention that GM somehow breached a contract with her, arguing over more than a dozen pages that GM was somehow legally obligated to return her to active employment following her commencement of a special leave of absence. Plaintiff fails to cite a single case – from Michigan or Georgia – which would support the existence of a contract claim under these circumstances. The reality of the matter is that plaintiff, an at-will employee, simply cannot demonstrate that she had a valid contractual arrangement to be considered for or receive a particular position with GM, and this claim too must fail.

Plaintiff argues that when she was on a special leave of absence, GM was somehow obligated to make extraordinary efforts to reemploy her, but this argument is not supported by the facts or the law.[2] Plaintiff has not disputed the fact that at the time she accepted the special leave of absence, GM expressly informed her that she was not guaranteed a return to active employment at the

---

[2] Moreover, the claim that GM breached a contract with plaintiff by not reemploying her under the terms of the special leave of absence program is not mentioned in plaintiff's Complaint. *See* Complaint ¶¶ 28-32

conclusion of the leave. *See* GM Fact ¶¶ 27-28. Plaintiff apparently believes that her tenure with GM, as well as her willingness to accept a position if offered, constitutes sufficient consideration for a legally enforceable contract for reemployment (Plaintiff's Memorandum at 4), but points to no legal authority for such a broad conclusion.

On the other hand, the same authority supporting the conclusion that plaintiff's employment could be terminated at will belies the conclusion that she had an enforceable contract to be considered for or offered additional opportunities during her leave of absence. In addition to the Michigan authorities cited above, Georgia courts have recognized that an at-will employee has no contractual rights whatsoever when it comes to her relationship with her employer. *See, e.g., Culpepper v. Thompson*, 562 S.E. 2d 837, 840 (Ga. App. 2002) (affirming dismissal of tortious interference with contract claim because the plaintiff, an at-will employee, "had no enforceable contract rights with which to interfere so as to give rise to a breach of contract").

In a situation with facts analogous to those presented here, at least one federal court in this jurisdiction has recognized that where employment is at will, a plaintiff cannot have a contractual cause of action where an offer of a position is withdrawn before the employee begins working. *Murtagh v. Emory Univ.*, 152 F. Supp. 2d 1356, 1365-66 (N.D. Ga. 2001). "[I]t would be completely illogical to

hold that an employer is exposed to liability if it invokes the right to terminate at will before the employee begin working but is absolved from liability if it defers doing so until immediately after the employee reports for work." *Id.* Applying this reasoning to plaintiff's arguments here, she simply has no cause of action for GM's alleged failure to consider or hire her for another position during her leave of absence, as GM could have terminated her without recourse immediately after her employment began. "It simply would make no sense for plaintiff to have a cause of action when [she] was never appointed [to a particular job] if [she] would have no claim had [she] been appointed, then [terminated] an hour later." *Id.* at 1366.[3]

Even if plaintiff could demonstrate that she had an enforceable agreement to post for jobs with GM, she cannot ignore that she was in fact able to post for jobs – her postings simply were not processed because she was not on active status. *See* GM Fact ¶ 44. Moreover, plaintiff has not demonstrated that if her postings had

---

[3] Plaintiff also cites to language purportedly contained in GM's employee handbook in support of her claim. *See* Plaintiff's Memorandum at 14. Plaintiff has failed to include in her filings the handbook or the pertinent provisions on which she relies. Regardless of this omission, courts applying Michigan law have rejected similar arguments and concluded that GM's handbook provisions do not deter from the conclusion that its salaried employees are retained on an at-will basis. *See Richards*, 991 F.2d at 1235 (while handbook is "designed to reassure employees that GM will act reasonably and retain employees where practical," it does not "provide[] any express limitations on GM's power to fire").

CC 1398668v1

been processed she would have been the most qualified candidate for any particular position and thus would have been hired. Plaintiff appears to believe that allowing her to submit an application and resume is equivalent to guaranteeing her a job, repeating no less than five times in her brief that GM somehow agreed or elected to reemploy her, despite the absence of any evidence to support such a contention. *See* Plaintiff's Memorandum at 7, 15 (stating defendants "expressly agreed to re-employ" plaintiff), 8 (arguing that plaintiff "elected to be re-employed by posting for jobs"), 9 (contending plaintiff "made a rational, informed decision to be re-employed by" GM), 16 (plaintiff "specifically elected [to] be re-employed"). This is simply not the case, as allowing an individual to express interest in a position is a far cry from promising that person that she is to be hired.[4]

Finally, it bears noting that under both Georgia and Michigan law, a plaintiff is hard pressed to go forward on a breach of contract claim based solely on oral statements by her employer. Under Georgia law, "oral promises as to future events are not enforceable by at will employees . . . and cannot provide grounds for a breach of contract claim." *Plane v. Uniforce MIS Services*, 479 S.E.2d 18, 20 (Ga.

---

[4] Plaintiff also contends that she offered valid consideration for the agreement to allow her to post for jobs through the OAP by foregoing additional separation benefits through GM's External Opportunity Program ("EOP"). Plaintiff's Memorandum at 16. It is important to note that in March 2003, GM offered plaintiff a package equivalent to the EOP provided she sign a release, which plaintiff declined to do. *See* Plaintiff's Deposition at 196, 198.

CC 1398668v1

App. 1996). In Michigan, courts have recognized that employees "often harbor optimistic hope of a long relationship that causes them to misinterpret their employer's oral statements as manifestations of an intention to undertake a commitment in the form of a promise of job security." *Rood v. General Dynamics Corp.*, 507 N.W.2d 591, 598 (Mich. 1993) (citations and internal quotations omitted). Accordingly, "oral statements of job security must be clear and unequivocal to overcome the presumption of employment at will." *Id.* Notwithstanding the numerous cases cited above holding that GM salaried employees are indeed employees at will, nothing about the conditions of the special leave of absence accepted by plaintiff – which provided only that plaintiff "may" be reemployed under certain circumstances – or Zimmer's alleged statements to plaintiff that she could post for jobs through the OAP – a unit not under Zimmer's supervision or control – can be deemed a "clear and unequivocal" promise of a job, and her claim of breach of contract remains subject to summary disposition.

### III. Plaintiff has failed to create a genuine issue as to whether she was discriminated against on the basis of her sex.

Plaintiff also continues to argue that she is entitled to carry her claim of sex discrimination to a jury, but appears to agree that she cannot base this claim on any of the alleged events during her assignment to and removal from the Doraville

CC 1398668v1

plant, as she fails to address these claims in her briefing. *See* Defendants' Opening Memorandum at 3-7 (explaining that claims arising from plaintiff's assignment to and removal from Doraville are untimely). Rather, plaintiff contends that it is GM's alleged "failure to make an effort to re-employ" her and "to consider her job postings" which constitutes the discriminatory actions in this case. Plaintiff's Memorandum at 18. Regardless whether these acts may be deemed adverse as a matter of law, plaintiff has failed to carry her summary judgment burden of creating a genuine issue that GM's alleged acts or omissions in this regard were motivated in any way by her gender.

In its opening brief, GM pointed out that plaintiff had not identified in her deposition testimony any similarly situated male employee who had been returned to work following a special leave of absence.[5] In response, plaintiff offers an affidavit in which she states that she is "aware of a number of male employees that took a special leave of absence . . . and at the end of the special leave of absence [GM] made an effort to re-employ those employees," and that some were

---

[5] Plaintiff suggests that defendants are holding her to an improperly rigid standard by purportedly requiring her to identify an "identically situated" employee as opposed to one who is only "similarly situated" to her. Plaintiff's Memorandum at 21. Defendants believe they have analyzed plaintiff's claims under the proper standard, and, as discussed in detail below, has failed to identify a similarly situated employee with the requisite degree of specificity to overcome a motion for summary judgment.

ultimately reemployed. *See* Affidavit of Mary L. Metzler at ¶¶ 36-37. Plaintiff also contends that she is aware of "numerous male employees that had their postings to the OAP line considered and ultimately received the jobs for which they posted." *Id.* at ¶ 35. Plaintiff's affidavit, however, is woefully insufficient in that it fails to identify a single one of these male employees by name, nor does it explain in any way the circumstances of their alleged consideration and reemployment that might somehow demonstrate that they were similarly situated to her. In addition, plaintiff has failed to even allege that she is aware of any employee, male or female, who was not on active status whose postings to the OAP line were considered, and therefore has not pointed to a similarly situated individual who received more favorable treatment.[6] *See* GM Fact ¶¶ 44, 46.

GM cannot substantively respond to such overly broad and generalized allegations. As a result, plaintiff has failed to present the evidence required to overcome a motion for summary judgment. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment

---

[6] Moreover, plaintiff has failed to rebut the fact that the primary individual whom she accuses of sex discrimination, Gordon Zimmer, was not involved in the processing of postings to the OAP line, stating only that she was not aware that he was not responsible for this area of GM's business until February 2003. *See* Plaintiff's Response to GM Fact ¶37.

CC 1398668v1

upon a court's determination that no genuine issue for trial exists") (citations and internal quotations omitted).

Perhaps aware of the insufficiency of such generalized allegations, plaintiff also argues that she need not identify evidence in support of her claims at the summary judgment stage, suggesting that she will produce evidence at a hearing on defendants' motion[7] and at trial in support of her claims. Plaintiff's Memorandum at 23. Plaintiff is not entitled to wait until trial to produce the evidence that supports her allegations of sex discrimination. Rather, in response to the motion for summary judgment, she "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A party "may not wait until trial to develop claims . . . relevant to the summary judgment motion." *Golden Oil Co. v. Weems*, 543 F.2d 548, 551 (5th Cir. 1976). *See also Resolution Trust Corp.*, 43 F.3d at 592 (same); *United States v. Reinhardt College*, 597 F. Supp. 522, 526 (N.D. Ga. 1983) (party "cannot wait until trial to ambush the [opposing party] with a surprise argument"). GM has explained the legitimate, nondiscriminatory basis for its decisions regarding plaintiff, and she has provided nothing that might suggest her gender played any part in them. Plaintiff's failure to come forward at

---

[7] Defendants note that in this jurisdiction, hearings on motions are not held as a matter of course. *See* LR 7.1(E).

-12-

this stage with competent evidence in support of her claim of gender discrimination compels the entry of summary judgment on this count as well.

Wherefore, defendants General Motors Corporation ("GM"), Jerome Hunter, Barry Woods and Gordon Zimmer respectfully renew their request that the Court enter an Order granting their motion for summary judgment, dismissing all claims set forth in plaintiff's Complaint, and for whatever other and further relief the Court deems appropriate.

Respectfully submitted this 4th day of April, 2005.

LATHROP & GAGE L.C.

_/s/ Diana Suber_____
David C. Vogel    Mo. Bar No. 45937
Admitted Pro Hac Vice
2345 Grand Boulevard, Suite 2800
Kansas City, MO 64108-2684
Phone:     (816) 292-2000
Fax:   (816) 292-2001

and

MCGUIRE WOODS, LLP

Diana D. Suber
The Proscenium
1170 Peachtree Street, Suite 2100
Atlanta, Georgia  30309
Phone:     (404) 443-5500
Fax:       (404) 443-5599

ATTORNEYS FOR DEFENDANTS

CC 1398668v1

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| MARY L. METZLER,           ) | |
| )            | |
| Plaintiff,       ) | Case No. 1:03-CV-2625-BBM |
| )            | |
| v.                         ) | |
| )            | |
| GENERAL MOTORS CORPORATION,) | |
| et al.,                    ) | |
| )            | |
| Defendants.      ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2005, I electronically filed Defendants' Reply Memorandum in Support of Their Motion for Summary Judgment with the Clerk of Court using the CM/ECF system. I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participant:

Kenneth W. Sheppard
17931 Georgia Highway 67 S #210
Statesboro, Georgia 30458

*/s/ Diana Suber*
Diana D. Suber (GA Bar No. 690724)
1170 Peachtree Street, Suite 2100
Atlanta, Georgia 30309
Phone:(404) 443-5500/Fax: (404) 443-5599
An Attorney for Defendants

CC 1398668v1